Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer.
3. The date of plaintiffs compensable injury was 30 April 1994.
4. Liberty Mutual Insurance was the carrier on the risk.
5. Plaintiffs average weekly wage at the time of the injury was $246.86, which yields a compensation rate of $189.86.
6. Plaintiff last worked on 30 June 1998.
7. A set of plaintiffs medical records, marked as Stipulated Exhibit Number Two, is admitted into evidence.
8. The prior Opinion and Award filed 26 August 1997 by Deputy Commissioner Mary Hoag is a part of the record in this case.
 EVIDENTIARY RULINGS
The objections appearing in the depositions of Drs. Lugas and Guthrie are OVERRULED.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. The prior Opinion and Award filed in this case on 26 August 1997 found plaintiffs injuries to her neck, right shoulder and arm to be compensable and causally related to the injury by accident on 30 April 1994.
2. Following her compensable injury on 30 April 1994, plaintiff returned to work as a certified nursing assistant for another employer, Life Care Center, on 21 February 1995. Plaintiff continued to work in that capacity through 30 June 1998. Prior to her termination, plaintiff was employed on a full-time basis during the third shift. Plaintiff was responsible for providing care to the employers elderly residents. While employed by Life Care Center, plaintiff developed left elbow tendonitis, a condition wholly unrelated to her employment with defendant-employer. At the time of her termination, plaintiff also suffered from severe anemia. Plaintiff was terminated from this employment due to excessive absenteeism.
3. Plaintiff presented to Dr. Thomas R. Lugas on 30 June 1998 for continued treatment of her chronic anemia. Dr. Lugas is a general practitioner who is plaintiffs family physician. On that date, plaintiff also complained of bilateral upper extremity pain and weakness with persistent right shoulder discomfort. At the hearing before the Deputy Commissioner, plaintiff presented evidence that Dr. Lugas excused plaintiff from work on 30 June 1998. Plaintiffs testimony concerning the doctors note is credible. Although plaintiff took the out of work note to Life Care Center, she was discharged by this employer.
4. When plaintiff returned to Dr. Lugas on 6 July 1998, she complained of continuing neck and bilateral upper extremity discomfort. Dr. Lugas restricted her from lifting or straining and noted that she had been fired from her job. When she was next evaluated on 20 July 1998 her upper extremity pain had diminished because she was not working and was doing no lifting or straining. During her next appointment on 18 August 1998, Dr. Lugas treated plaintiffs left elbow tendonitis with an injection. At the next two appointments, Dr. Lugas treated plaintiffs left elbow tendonitis. He did not treat her for right shoulder or neck pain.
5. On 24 September 1998, Dr. Lugas again treated plaintiff for continuing right shoulder and upper extremity pain. He also treated her for anemia and left elbow tendonitis. On that date, Dr. Lugas referred plaintiff to Dr. Todd B. Guthrie, an orthopedic surgeon. Dr. Lugas next evaluated plaintiff on 18 November 1998 and excused plaintiff from work by providing her with a note stating "Ms. Collins has been unable to work since June 29, 1998 due to left elbow and right shoulder pain.
6. Dr. Guthrie evaluated plaintiff on 3 November 1998. Dr. Guthrie diagnosed plaintiffs condition as supraspinatus myofascial syndrome and impingement of the right shoulder. Dr. Guthrie also felt that plaintiff might have chronic pain syndrome in the right arm. He administered anesthetic injections and recommended massage therapy for four weeks. Plaintiff returned to Dr. Guthrie on 6 December 1998. Plaintiff continued to complain of right shoulder pain. Dr. Guthrie recommended no additional treatment modalities for her right shoulder and referred plaintiff to Dr. Charles R. Shields at Western Carolina Rehabilitation Medicine. In response to a letter from plaintiffs counsel dated 5 February 1999, Dr. Guthrie stated that as of 6 December 1998, plaintiff was not capable of returning to work as a certified nursing assistant.
7. Since 30 June 1998, plaintiff has not sought any employment.
8. Dr. Guthrie did not excuse plaintiff from all work, but only excused her from work as a nursing assistant. However, Dr. Lugas statement that plaintiff "has been unable to work since June 29, 1998 creates the reasonable inference that he excused her from all work, not just work as a nursing assistant.
9. Plaintiff will benefit from a functional capacity evaluation designed to determine her exact physical abilities and whether she may be capable of earning wages in some position other than her previous work as a nursing assistant or whether she is capable of returning to work as a nursing assistant.
10. As a result of her injury on 30 April 1994, plaintiff was disabled and was not capable of earning wages from any employer beginning 30 June 1998 and continuing through the date of the hearing before the Deputy Commissioner.
11. As of the date of the hearing before the Deputy Commissioner, plaintiff had not reached maximum medical improvement.
12. Defendants defense of plaintiffs claim was not the result of stubborn, unfounded litigiousness.
***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As the result of the compensable injury by accident, plaintiff is entitled to payment of temporary total disability compensation at the rate of $189.86 per week beginning 30 June 1998 and continuing until she returns to work or until further order of the Industrial Commission. N.C. Gen. Stat. 97-29.
2. Plaintiff is entitled to payment of all medical expenses incurred as a result of her 30 April 1994 injury for so long as such examinations, evaluations and treatments tend to effect a cure, give relief or tend to lessen her period of disability. The approved medical expenses include a functional capacity evaluation. N.C. Gen. Stat. 97-25; Hyler v. GTEProducts Co., 333 N.C. 258, 425 S.E.2d 698 (1993).
3. Defendants defense of plaintiffs claim was reasonable and, therefore, plaintiff is not entitled to an award of attorneys fees pursuant to N.C. Gen. Stat. 97-88.1.
4. Plaintiff is entitled to an attorneys fee assessed against defendants in the amount of $750.00. N.C. Gen. Stat. 97-88.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $189.86 per week beginning 30 June 1998 and continuing until she returns to work or until further order of the Commission. To the extent that this amount has accrued, it shall be paid in a lump sum, subject to the attorneys fee approved in paragraph 3.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of her 30 April 1994 injury for so long as such examinations, evaluations and treatments tend to effect a cure, give relief or tend to lessen her period of disability. The approved medical expenses include a functional capacity evaluation.
3. A reasonable attorneys fee of twenty-five percent of the compensation due plaintiff is approved for plaintiffs counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff shall be deducted from that amount and paid directly to plaintiffs attorney. Thereafter, defendants shall pay plaintiffs attorney every fourth compensation check due plaintiff.
4. Defendants shall pay the costs due the Commission, including an attorneys fee to plaintiffs attorney in the amount of $750.00.
5. Defendants shall pay Dr. Lugas $100.00 as an expert witness fee.
This the ___ day of August 2000.
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/________________ RENÉE C. RIGGSBEE COMMISSIONER